UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANTONIO HALL,

    Plaintiff,

v.

SAC WIRELESS, LLC,

    Defendant.

CIVIL ACTION NO.
1:21-CV-05241-JPB

## ORDER

This matter is before the Court on Antonio Hall's ("Plaintiff") Motion for Partial Summary Judgment [Doc. 89] and SAC Wireless, LLC's ("Defendant") Motion for Summary Judgment [Doc. 91]. This Court finds as follows:

### BACKGROUND & PROCEDURAL HISTORY

Defendant is a general contractor that works on cell phone towers. On August 20, 2020, Defendant was installing and removing antennas on a cell phone tower for the benefit of a customer. As part of that project, Defendant contracted with Maxim Crane Works ("Maxim") for the use of a crane and a crane operator to assist Defendant with lifting and lowering equipment. Plaintiff was a Maxim employee. While Plaintiff was disassembling the crane, the crane contacted an energized power line, and Plaintiff was electrocuted.

Plaintiff filed suit against Defendant on November 24, 2021, asserting claims for negligence and punitive damages. [Doc. 1-1]. Thereafter, on December 21, 2021, Defendant filed its answer asserting multiple affirmative defenses. [Doc. 2]. Particularly relevant here, Defendant alleged that Plaintiff's claims are barred by the exclusive remedies provided under the Georgia Workers' Compensation Act ("WCA") and O.C.G.A. § 34-9-8. Id. at 2. Specifically, Defendant asserted that it is entitled to tort immunity pursuant to the "statutory employer" doctrine. Both parties have moved for summary judgment as to this issue. [Doc. 89]; [Doc. 91]. The motions are now ripe for review.

## FACTS

The Court derives the facts of this case from Plaintiff's Statement of Facts [Doc. 89-14], Defendant's Response to Plaintiff's Statement of Facts [Doc. 96-4], Defendant's Statement of Facts [Doc. 92-2] and Plaintiff's Response to Defendant's Statement of Material Facts [Doc. 99]. The Court also conducted its own review of the record.

Defendant is a general contractor that performs work on cell phone towers for companies like Nokia. [Doc. 90-3, p. 12]; [Doc. 90-4, pp. 26-27]. In August 2020, Defendant was performing work on a cell phone tower owned by American Tower and located at 1676 Juliet Road in Stone Mountain, Georgia. [Doc. 90-3, pp. 20, 23]. The work at this particular cell phone tower involved removing nine

antennas and installing three new antennas. Id. at 29-30. The work also involved, among other things, installing five remote radio units and overvoltage protection. Id. at 30. Put simply, "the primary purpose of this job was indeed to take old antennas down . . . along with the other items . . . and put new ones up with the other items." Id. at 35.

Defendant determined that a crane was needed to complete the work on the cell phone tower. Specifically, a crane was needed to lift people, antennas and associated gear up and down from the tower. Id. at 29. Defendant contracted with Maxim for the use of a crane for four days, and Maxim provided the crane, a crane operator and a crane oiler[1] for Defendant's use. Id. at 41. When a crane is used for a cell phone tower project, one of Defendant's employees will tell the crane operator exactly where the particular piece of equipment needs to go, and the crane operator will either lift or lower the equipment. [Doc. 90-5, p. 33]. Without the crane, Defendant cannot drop or add the antennas to the cell phone tower. [Doc. 90-7, p. 13].

On August 20, 2020, Plaintiff, an employee of Maxim, went to the cell phone tower to assist in the breakdown of the crane. [Doc. 90-6, p. 18]. When Plaintiff arrived on the scene, the crane was still being used to hoist antennas and

---

[1] An oiler is the person that tends to the matters of the crane, such as the setup and breakdown. [Doc. 90-6, p. 14].

parts. Id. at 35. After the hoisting was done, Plaintiff began disassembling the crane. During this process, Plaintiff put his foot on the outrigger and was electrocuted. Id. at 61.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving

party." Id.  Where, as here, the parties file cross-motions for summary judgment, the facts are viewed in the light most favorable to the nonmoving party on each motion.  James River Ins. Co. v. Ultratec Special Effects Inc., 22 F.4th 1246, 1251 (11th Cir. 2022).  After the movant satisfies this initial burden, the nonmovant must show specific facts indicating that summary judgment is improper.  Allen, 121 F.3d at 646.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

The WCA "is designed to provide for relief to injured employees, while also protecting employers from excessive recoveries of damages."  Savannah Hosp. Servs., LLC v. Scriven, 828 S.E.2d 423, 425 (Ga. Ct. App. 2019).  The WCA contains an exclusive remedy provision.  O.C.G.A. § 34-9-11(a).  Consequently, if the WCA applies, an injured employee may only seek relief in the form of workers' compensation benefits from his employer and may not seek tort damages.  Carr v. FedEx Ground Package Sys., Inc., 733 S.E.2d 1, 3 (Ga. Ct. App. 2012).

O.C.G.A. § 34-9-8, which is the statutory employer provision of the WCA, "makes principal or intermediate contractors secondarily liable for workers' compensation benefits for injured employees of a subcontractor." Id.  The statutory employer doctrine "thus permits liability for workers' compensation benefits to attach vicariously against someone other than an injured employee's employer." Manning v. Ga. Power Co., 314 S.E.2d 432, 433 (Ga. 1984). Importantly, because of this vicarious liability, statutory employers are immune from tort actions under the exclusive remedy provision of the WCA.  Carr, 733 S.E.2d at 3 ("Immunity from tort actions under the exclusive remedy provision is a correlative benefit of the statutory employer's liability to pay workers' compensation benefits.").

The statutory employer provision states that "[a] principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer." O.C.G.A. § 34-9-8(a). Any company falling under this definition is considered a "statutory employer" of its subcontractor's injured employee.  Patterson v. Bristol Timber Co., 649 S.E.2d 795, 801 (Ga. Ct. App. 2007).  As a general rule, this provision applies "only where the principal has contracted to perform certain work for another and has subcontracted some or all of that work." Carr, 733 S.E.2d at 4.  As explained by

6

the Georgia Court of Appeals, O.C.G.A. § 34-9-8 "embraces all who are in the venture with the hope of making a profit out of the *doing* of the work as distinguished from one out of the use or disposition of the completed project." Id.

Plaintiff asserts that the statutory employer defense does not apply because Maxim was not Defendant's subcontractor. Under Georgia law, "a 'principal contractor' engages subcontractors to assist in the performance of the work or the completion of the project which the 'principal contractor' has undertaken to perform for another." Mullinax v. Pilgrim's Pride Corp., 840 S.E.2d 666, 672 (Ga. Ct. App. 2020).

The Court is satisfied that the undisputed evidence shows that Defendant contractually retained Maxim to provide a crane to assist with hoisting workers and equipment to and from the tower in order to fulfill its own contract with its customer.[2] Here, Defendant agreed to perform a cell phone tower upgrade for a customer. Then, Defendant engaged Maxim to assist in the project. The project could not have been completed without the crane and its operator lifting and lowering equipment and people. In sum, this Court finds that the work performed

---

[2] In his reply brief, Plaintiff argues that he is entitled to summary judgment because Defendant failed to show a primary contract between itself and another party. [Doc. 104, p. 5]. Plaintiff, however, admitted that "Plaintiff was electrocuted on a jobsite where [Defendant] was acting as a general contractor, performing a cell tower project *for the benefit of a customer*." [Doc. 99, p. 2] (emphasis added).

by Maxim—lifting workers and equipment to and from the cell phone tower—was done to assist Defendant in a contract that Defendant had with its customer to upgrade the cell phone tower.  Thus, Defendant was a principal contractor and Maxim was a subcontractor for purposes of O.C.G.A. § 34-9-8(a).[3]  See Patterson, 649 S.E.2d at 797 (finding that appellee was a principal contractor because it had entered into a contract to supply wood chips to a packaging company, and, in order to effectuate that contract, it executed a contract with the plaintiff's employer to load and transport the wood chips to the packaging company); Int'l Leadburning Co v. Forrister, 445 S.E.2d 546, 559 (Ga. Ct. App. 1994) (finding that a crane rental company was a subcontractor when it was hired to assist in lifting a heavy object).

The inquiry does not end there, however.  For the statutory employer doctrine to apply, the injured employee must be engaged upon the subject matter of the contract.  Plaintiff argues that this requirement is not satisfied because his injury occurred after the hoisting work (lifting the workers and equipment) was

---

[3] The Court is not convinced by Plaintiff's argument to the contrary.  By comparing a crane rental to a ratchet wrench, Plaintiff argues that Maxim was not a subcontractor because Maxim merely provided a "tool" for use.  Plaintiff argues that "Maxim was no more a subcontractor [for Defendant] than would be Sunbelt Rental or any other tool rental company." [Doc. 89-1, p. 11].  Defendant "controlled the crane much like a worker controls a ratchet wrench."  Id.  The tool analogy falls short here because Maxim provided not only the crane for use, but its employees to assist and further Defendant's contract with its customer.

completed. In Plaintiff's view, the subject matter of the contract was strictly limited to the hoisting work, and Plaintiff was merely "a pickup man." [Doc. 89-1, p. 24].

The Court is not convinced that the statutory employer doctrine only applies in this case if the injury occurred while the crane was actively operating to assist Defendant with lifting or lowering a person or equipment. Indeed, Plaintiff has provided no legal support for the contention that because Plaintiff was breaking down the crane, rather than actively hoisting parts to Defendant's personnel in the tower, that he was not engaged in the subject matter of the contract. It is the Court's belief that erecting the crane, tending to the needs of the crane and disassembling the crane were as much a part of the contract as the hoisting activities. In other words, all aspects of the crane rental, including delivery and set-up of the crane, the hoisting and the removal of the crane were in furtherance of the contract. Ultimately, this Court finds that Plaintiff was engaged in the subject matter of the contract even though he was injured when he was disassembling the crane.

*** 

To summarize, the undisputed evidence establishes that Defendant was a principal contractor performing a cell phone tower upgrade for a customer. The evidence also establishes that Defendant hired Maxim as a subcontractor to assist

9

with the cell phone tower upgrade and that it was during the performance of the contract that Plaintiff was injured.  Because these facts fall squarely within the language of O.C.G.A. § 34-9-8(a), the Court finds that Defendant was Plaintiff's statutory employer under the WCA.  Defendant is thus entitled to immunity.

## CONCLUSION

For the forgoing reasons, Plaintiff's Motion for Partial Summary Judgment [Doc. 89] is **DENIED**, and Defendant's Motion for Summary Judgment [Doc. 91] is **GRANTED**.[4]  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 11th day of September, 2023.

J. P. BOULEE
United States District Judge

---

[4] Also pending before the Court is Plaintiff's Motion to Strike Affidavit of Troy Wagner. [Doc. 100].  Because the affidavit was not necessary in resolving this motion, the motion is **DENIED** as moot.